Joseph LANKHEIT, d/b/a Harper–
Lankheit Motor Company,
Claimant–Appellant,

v.

ESTATE OF Evelyn SCHERER,
Defendant–Respondent.

Joseph LANKHEIT, d/b/a Harper–
Lankheit Motor Company,
Plaintiff–Appellant,

v.

Joseph F. SCHERER, Individually, and
Joseph F. Scherer, Personal Representative of the Estate of Evelyn Scherer,
Deceased, Defendants–Respondents.

Nos. 16955, 16956.

Missouri Court of Appeals,
Southern District,
Division Two.

June 28, 1991.

Phillip J. Barkett, Jr., Dempster, Barkett & McClellan, Sikeston, for claimant-appellant.

Lawrence E. Wanner, Dexter, for defendants-respondents.

FLANIGAN, Chief Judge.

On January 10, 1989, appellant Lankheit sold, on credit, a new 1988 Plymouth automobile to Joe Scherer. Evelyn Scherer, Joe's mother, was a co-signer with him on the "Retail Installment Contract and Security Agreement," (the contract), executed on that date. The contract included an installment note in the principal amount of $19,-522.80, payable in 59 monthly installments of $325.38, beginning February 9, 1989. On June 23, 1989, Evelyn Scherer died.

Lankheit assigned the contract to a bank. The assignment was with recourse. In November 1989, the loan represented by the note became past due. On November 22, 1989, Lankheit sent Joe Scherer a notice of Lankheit's intention to sell the Plymouth at private sale. On November 27, 1989, the bank sent another notice addressed to Joe and Evelyn Scherer, and used the address of the Scherers as stated in the contract. Also on November 27, 1989, Joe Scherer returned the vehicle to Lankheit.

The bank reassigned the contract to Lankheit. On December 12, 1989, Lankheit filed an action (Case No. CV589–553AC) in the Associate Division of the Circuit Court of Stoddard County against Joe Scherer and Evelyn Scherer, seeking a "deficiency" judgment for the difference between the balance due on the note and the amount realized by the sale of the Plymouth. Later an amended petition was filed against Joe Scherer individually and as personal representative of the estate of Evelyn Scherer, deceased.

On December 19, 1989, Joe Scherer was appointed personal representative of the estate of Evelyn Scherer. On January 18, 1990, Lankheit filed, in the Probate Division of the Circuit Court of Stoddard County, a claim against the estate of Evelyn Scherer, seeking a similar deficiency judgment (Case No. CV789–113P).

By agreement of the parties, the action in the associate division and the claim in the probate division were tried together, on the same evidence, before Judge Paul McGhee. Lankheit testified that on December 26, 1989, he sold the vehicle at private sale for $6,850.

The trial court found against Lankheit and in favor of the defendants in both proceedings. With respect to Joe Scherer, the court found that Lankheit did not give

the post-sale notice required by § 408.557.[1] With regard to Evelyn Scherer and her personal representative, the court found that Lankheit did not give the pre-sale notice required by § 400.9–504(3), or the post-sale notice required by § 408.557. The court also found that such failures "require that judgment be in favor of the defendants." Judgment was entered in favor of both defendants in the action in the associate division, and an order denying Lankheit's claim was entered in the probate division. Lankheit appeals.

Lankheit's first point is that, with respect to both defendants, the trial court erred in denying him relief due to his failure to give the post-sale notice required by § 408.557 because: (a) neither defendant filed a pleading raising "an affirmative defense of non-liability by reason of the failure to give such notice" and defendants "cannot rely on an affirmative defense not specifically pleaded"; (b) § 408.557 does not apply to this transaction "because retail time installment contracts relative to motor vehicles are specifically excluded from the group of transactions to which § 408.557 applies"; and (c) denial of a deficiency judgment is a drastic remedy which is not available for failure to give the post-sale notice.

Section 408.557 reads:

"1. When a lender sells or otherwise disposes of collateral in a transaction in which an action for a deficiency may be commenced against the borrower, prior to bringing any such action or upon written request of the borrower, the lender shall give the borrower the notice described in this section. A lender gives notice to the borrower under this section when he delivers the notice to the borrower or mails the notice to him at his last known address.

2. The notice shall be in a writing and conspicuously state:

(1) The name, address and telephone number of the lender to whom payment of any deficiency is to be made;

(2) An identification of the goods sold or otherwise disposed of;

(3) The date of sale or other disposition;

(4) The nature of the disposition if other than a sale, or, if a sale, whether or not the goods were sold at public auction and the name and address of the person who conducted the auction;

(5) The amount due the lender immediately prior to the disposition after deducting the amount of any refund of interest and, if known to the creditor, insurance premiums;

(6) The sale price;

(7) Expenses incurred by the lender permitted to be deducted from the sale price before application to the debt pursuant to sections 400.9–501 to 400.9–507, RSMo, itemized and identified to show the nature of each such expense; and

(8) The remaining deficiency, or surplus, as of the date of sale, computed by subtracting item (7) from item (6) and subtracting the difference so determined, if more than zero, from item (5)."

■ Lankheit's argument in support of ground (a) is based on Rule 55. A sufficient answer to ground (a) is that Rule 55, and more specifically Rule 55.08 dealing with the pleading of affirmative defenses, does not apply either to the action which originated in the associate division or to the claim which originated in the probate division. Rule 41.01(b) provides, in pertinent part: "Civil actions originating before an associate circuit judge or in the probate division of the circuit court but which are pending in the ... Court of Appeals ... shall be governed by Rules 41 through 101, except that Rule 55 shall not apply unless the court orders the application of Rule 55, or specified portions of it...." The trial court did not, in either of the underlying proceedings, enter such an order. See *Ellinwood v. Estate of Lyons*, 731 S.W.2d 23, 26[6] (Mo.App.1987). It is unnecessary to consider respondents' argument that failure to give the statutory notice is not an

---

1. Except where otherwise indicated, all references to statutes are to RSMo 1986, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

affirmative defense. Ground (a) has no merit.

■ In his argument in support of ground (b), Lankheit states:

"Section 408.250 applies to retail credit sales involving certain types of 'goods.' Section 408.250(1) and Section 408.250(4). The definition of 'goods' under Section 408.250 specifically excludes motor vehicles. Because motor vehicles are excluded from retail time transactions under Section 408.250, it is submitted that Section 408.551, and, therefore, Section 408.557, are not applicable to the transaction in the case at bar which involves the financing of an automobile."

Sections 408.250 to 408.370 deal with retail credit sales. It is true that, for the purposes of §§ 408.250 to 408.370, the word "goods" does not include motor vehicles. See § 408.250(4). However, § 408.-557, the statute involved here, is not included in §§ 408.250 to 408.370 to which that definition of "goods" applies.

Sections 365.010 to 365.160, the Motor Vehicle Time Sales Law, include provisions with regard to a retail installment contract which, under § 365.020(10), is an agreement evidencing a retail installment transaction entered into in Missouri pursuant to which the title to or a lien upon the motor vehicle, which is the subject matter of the retail installment transaction, is retained or taken by the seller from the buyer as security for the buyer's obligation. The contract here is of that type and, indeed, makes specific reference to § 365.140 which is a part of the Missouri Motor Vehicle Time Sales Law.

The legislature has, in two different statutes, provided that § 408.557 applies to any retail installment transaction made pursuant to § 365.010 to § 365.160. Section 365.145 reads: "Sections 408.551 to 408.-562, RSMo, shall apply to any retail installment transaction made pursuant to sections 365.010 to 365.160." Section 408.551 reads, in pertinent part: "Sections 408.551 to 408.562 shall apply to any credit transaction made pursuant to sections 365.010 to 365.160, RSMo, and sections 408.100 to 408.370. For the purposes of this section,

unless the context requires otherwise, 'credit transaction' shall mean any retail installment transaction as defined by section 365.020." Section 365.020(11) defines "retail installment transaction" as "a sale of a motor vehicle by a retail seller to a retail buyer on time under a retail installment contract for a time sale price payable in one or more deferred installments."

The contract was a retail installment transaction as defined in § 365.020(11). Section 408.557 applies to this transaction. § 365.145; § 408.551. Ground (b) has no merit.

■ In his argument under ground (c), Lankheit concedes that the post-sale notice required by § 408.557 was not given. As previously pointed out, § 408.557 applies to this transaction. Section 365.145 requires that application.

Section 365.150 reads, in pertinent part:

"2. Any person violating section 365.-070, 365.080, 365.090, 365.100, 365.110, 365.120, 365.130, 365.140, or 365.145 shall be barred from recovery of any time price differential, delinquency or collection charge on the contract.

3. Notwithstanding the other provisions of this section, the failure to comply with any provision of this chapter with respect to any retail installment transaction may be corrected by the seller or holder within thirty days after the date of the sale, and, if so corrected, neither the seller nor the holder shall be subject to any criminal penalty or civil forfeiture under this chapter for the failure."

Neither in the trial court nor in this court has Lankheit made any claim that he corrected his failure to give the post-sale notice within the time prescribed by § 365.-150.3.

Lankheit's admitted failure to give the post-sale notice is a violation of § 365.145. The penalty is that Lankheit is barred from recovery of "any time price differential, delinquency or collection charge on the contract." § 365.150.2.

As used in the Missouri Motor Vehicle Time Sales Law, "time price differential" means "the amount, however denominated or expressed, as limited by section 365.120, in addition to the principal balance to be paid by the buyer for the privilege of purchasing the motor vehicle on time to be paid for by the buyer in one or more deferred installments." § 365.020(14).

Sections 365.120, as applicable here, reads:

"1. Notwithstanding the provisions of any other law, the time price differential included in a retail installment transaction shall not exceed the following schedule:

Class 1. Any new motor vehicle designated by the manufacturer by a year model not earlier than the year in which the sale is made—ten dollars per one hundred dollars per year.

Class 2. Any new motor vehicle not in class 1 ... ten dollars per one hundred dollars per year."

The Plymouth is a Class 2 vehicle.

Section 365.020 contains definitions applicable to the Missouri Motor Vehicle Time Sales Law. Neither the word "delinquency" nor the term "collection charge" is included in those definitions. However, § 365.100 reads:

"If the contract so provides, the holder thereof may charge and collect:

(1) A delinquency and collection charge on each installment in default for a period of not less than ten days in an amount not to exceed five percent of each installment or five dollars, whichever is less, provided, however, that a minimum charge of one dollar may be made; or

(2) Interest on each delinquent payment at a rate which shall not exceed the highest lawful contract rate. In addition to such charge, the contract may provide for the payment of attorney fees not exceeding fifteen percent of the amount due and payable under the contract where the contract is referred for collection to any attorney not a salaried employee of the holder, plus court costs."

Lankheit violated § 408.557, and therefore he violated § 365.145. Under § 365.-150.2, he is barred from recovery of "any time price differential, delinquency or collection charge on the contract." Those items do not constitute any portion of the principal balance. They do not constitute the entire indebtedness. Lankheit's violation of § 408.557 was not a total bar to recovery. It merely barred recovery of the items enumerated in § 365.150.2.

The trial court erred in holding that Lankheit's violation of § 408.557 was a complete defense with respect to both respondents. With respect to respondent Joseph F. Scherer, reversal and remand is necessary. That is not true with respect to the decedent's estate because the trial court denied recovery against the estate for the additional reason that Lankheit did not give the pre-sale notice required by § 400.9–504(3).

■ Lankheit's second point asserts that the trial court erred in denying him any relief against the estate of Evelyn Scherer because of his non-compliance with § 400.9–504(3). Lankheit argues that he sent the pre-sale notice required by § 400.9–504(3) to Joe Scherer, who was later appointed personal representative of the decedent's estate, and that, in so doing, he complied with the statute. For the reasons which follow, this court holds that, with respect to Evelyn Scherer and her estate, Lankheit did not comply with § 400.9–504(3), and that he is barred from making any recovery from the decedent's estate.

Section 400.9–504(3) reads, in pertinent part:

"Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market,

reasonable notification of the time and place of any public sale or *reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor.*" (Emphasis added.)

■■■ "Compliance with the notice provision of § 400.9–504(3) is a prerequisite to recovery of a deficiency after resale of the collateral." *Modern Auto Co., Inc. v. Bell,* 678 S.W.2d 443, 444[1] (Mo.App.1984). To similar effect see *Sedalia Mer. Bank & Tr. v. Loges Farms,* 740 S.W.2d 188, 196 (Mo. App.1987). Any doubt as to what constitutes strict compliance with the notice requirement is resolved in favor of the debtor. *Modern Auto Co., Inc. v. Bell, supra,* at 444; *Chrysler Capital Corp. v. Cotlar,* 762 S.W.2d 859, 861 (Mo.App.1989). The party seeking the deficiency judgment bears the burden of proving compliance with the § 400.9–504(3) requirement, including the burden of proving the sufficiency of the notice. *Cherry Manor v. American Health Care,* 797 S.W.2d 817, 821 (Mo. App.1990). Voluntary surrender of the collateral by the debtor to the creditor does not waive the debtor's right to notice and the statutory notice provision may not be waived or varied. *Id.* A guarantor is a debtor within the meaning of § 400.9–504(3), and is entitled to notice the same as the maker of the note. *Id.* A notice addressed and sent only to one of two debtors is not, when sent, notice to the co-debtor to whom it was not addressed. *Lendal Leasing, Ltd. v. Farmer's Wayside Stores, Inc.,* 720 S.W.2d 376, 379–380[5] (Mo.App. 1986).

Two pre-sale notices were sent by Lankheit. Lankheit himself sent the first notice on November 22, 1989. That notice was addressed only to Joe Scherer and was not addressed to Evelyn Scherer. Accordingly, it was not notice to Evelyn Scherer, even if she had been alive at that time. *Lendal Leasing Ltd. v. Farmer's Wayside Stores, Inc., supra.*

The only notice which was addressed to Evelyn Scherer was the notice sent by the bank on November 27, 1989. That notice read, in pertinent part: "The collateral will be sold at a private sale more than 20 days from the date of this letter." The letter was dated November 27, 1989. Even if Evelyn had been alive in November 1989, that notice would not validate a sale if the sale took place within 20 days of November 27, 1989.

This court assumes, but does not decide, that the notice of November 27, 1989, was sent to the debtor, Evelyn Scherer.[2]

On December 12, 1989, Lankheit filed a petition in Case No. CV589–553AC. That petition alleged, among other things, that the defendants (Joe Scherer and Evelyn Scherer) defaulted on their agreement to pay the note. The petition further alleged "that thereafter [Lankheit] did recover and sell the collateral securing said note for the sum of $6,850."

At the trial, Lankheit testified that the Plymouth was sold on December 26, 1989. That testimony was inconsistent with the petition. According to the petition, and the trial court was not required to believe otherwise, the sale had already taken place by December 12, 1989. Thus it took place

**2.** Section 400.9–504(3) is the Missouri version of § 9–504(3) of the Uniform Commercial Code. With regard to the notice requirement of the latter section, one treatise has said:

"Section 201(38) requires that the notice be properly addressed. However, the Code does not require that the debtor actually receive the notice. Section 1–201(26) makes this clear, and a comment states: 'When the essential fact is the other party's receipt of the notice, that is stated.' Neither 9–504(3) nor *the definition of 'send' explicitly states that* the notice must ultimately reach the debtor. We know of no case holding that the debtor must receive the notice, assuming it to have

been properly sent. Indeed, if a creditor had to assure debtor's receipt of the notice, a debtor could hide to prevent disposition of collateral! Of course, creditors can, and usually should, use certified mail and the like so that proof of mailing exists."

Uniform Commercial Code (Third Ed.) White and Summers, § 27–12, p. 602.

See, generally, 11 A.L.R.4th 241—sufficiency of secured party's notification of sale or other intended disposition of collateral under U.C.C. § 9–504(3). Sections 14–16 of that annotation deal with receipt or non-receipt by debtor of the notice.

contrary to the contents of the notice of November 27, 1989, which said that the sale would take place "more than 20 days from November 27, 1989."

The burden was on Lankheit to prove his compliance with § 400.9-504(3). The trial court did not err in finding, with respect to Evelyn Scherer and her personal representative, that Lankheit did not give the required pre-sale notice.

The trial court made no finding with respect to Lankheit's compliance or non-compliance with § 400.9-504(3) so far as defendant Joseph Scherer is concerned. Neither side has addressed that subject in their respective briefs. On retrial, either side may, if so advised, submit evidence and argument on that subject. The inquiry may include the effect, if any, of the facts that two notices instead of one were allegedly sent, their respective contents were not consistent, and they were sent by different senders. In no event, on retrial, may Lankheit be awarded any time price differential, delinquency or collection charge on the contract.

The judgment in Case No. CV789-113P, denying Lankheit's claim against the estate of Evelyn Scherer, deceased, is affirmed. That portion of the judgment in Case No. CV589-553AC, in favor of Joseph F. Scherer, personal representative of the estate of Evelyn Scherer, deceased, is affirmed. That portion of said judgment which is in favor of Joseph F. Scherer, individually, is hereby reversed and the cause remanded for a new trial on all issues, except that on such retrial plaintiff Joseph Lankheit, d/b/a Harper-Lankheit Motor Company, is barred from recovery of any time price differential, delinquency or collection charge on the contract. It is so ordered.

PARRISH, P.J., and SHRUM, J., concur.